UNITED STATES DISTRICT COURT

BLOOM, M.J.

for the

_____ District of _____

**ORIGINAL**

_____ Division

Case No. **CV 18-5750**

CLAUDE AUGUSTIN
_____

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

SwissPORT SA, LLC
_____

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

(to be filled in by the Clerk's Office)

Jury Trial: *(check one)* ☐ Yes ☐ No

**RECEIVED**
OCT 11 2018
**PRO SE OFFICE**

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

I.   **The Parties to This Complaint**

   A.   **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | CLAUDE AUGUSTIN |
| Street Address | 114-24 220th St Apt 24 |
| City and County | JAmaica |
| State and Zip Code | New York, 11411 |
| Telephone Number | 347-358-8579 |
| E-mail Address | OPSmailbox123@Gmail.com |

   B.   **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

    Name    _____

    Job or Title *(if known)*    _____

    Street Address    _____

    City and County    _____

    State and Zip Code    _____

    Telephone Number    _____

    E-mail Address *(if known)*    _____

Defendant No. 2

    Name    _____

    Job or Title *(if known)*    _____

    Street Address    _____

    City and County    _____

    State and Zip Code    _____

    Telephone Number    _____

    E-mail Address *(if known)*    _____

Defendant No. 3

    Name    _____

    Job or Title *(if known)*    _____

    Street Address    _____

    City and County    _____

    State and Zip Code    _____

    Telephone Number    _____

    E-mail Address *(if known)*    _____

Defendant No. 4

    Name    _____

    Job or Title *(if known)*    _____

    Street Address    _____

    City and County    _____

    State and Zip Code    _____

    Telephone Number    _____

    E-mail Address *(if known)*    _____

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Swissport Cargo Services, L.P. |
| Street Address | JFK International Airport Bldg. #151, STE #300 |
| City and County | Kew Gardens |
| State and Zip Code | New York 11415 |
| Telephone Number | |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[✓] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[ ] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Other federal law *(specify the federal law)*:

[✓] Relevant state law *(specify, if known)*:

Executive Law, Article 15, Section 296

[ ] Relevant city or county law *(specify, if known)*:

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [ ] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [ ] Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) About 10/1/16 - 4/18/2017

C. I believe that defendant(s) *(check one)*:

- [ ] is/are still committing these acts against me.
- [x] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x] race _____
- [ ] color _____
- [ ] gender/sex _____
- [ ] religion _____
- [x] national origin _____
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [ ] disability or perceived disability *(specify disability)*

E. The facts of my case are as follows. Attach additional pages if needed.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV. **Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

11/4/2016

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 8/14/18

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☑ less than 60 days have elapsed.

V. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am requesting back pay and punative damages in the amount of 2 million dollars back pay should be for days I was not allowed to work due to discrimination, punitive damages are due to emotional distress placed on me due to discrim

Page 5 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10-08-2018 / 10-11-18

Signature of Plaintiff: Claude Augustin

Printed Name of Plaintiff: CLAUDE AUGUSTIN

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

**DESCRIPTION OF DISCRIMINATION** - for <u>all complaints</u> (Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)

Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory. **PLEASE TYPE OR PRINT CLEARLY.**

It was a way for them to change my shift and give it to one of my manager's friends from the same nationality as him. I worked the night shift for two years before asking to get a better shift where I can make living. So since they do the schedule every two years I was finally able to get an afternoon shift. And now Mr. Anil send me back to the night shift for no reason.

Mr Anil was on vacation went I got that got. I worked on terminal 7 also. He told me that he has all of my information for Terminal 7 when he's not allowed that, he does not work for that Terminal. He also told if he was there I would not have gotten the job.

I want to get my afternoon shift back and for him to leave me alone. I feel harass at the job. Everything I do is wrong in his eyes. Every week now he's making up something to get me fired. When other people he knows does something they even get written off. With me, he takes everything to the extreme.

If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form. **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

8

**DESCRIPTION OF DISCRIMINATION** - for <u>all complaints</u> (Public Accommodation, Employment, Education, Housing, and all other regulated areas listed on Page 3)

Please tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory. **PLEASE TYPE OR PRINT CLEARLY.**

There are so many instances where I feel discriminate against. One situation I was at work one night after talking to one passenger that ask for help. I was not able to help because I already spoke to somebody else that needed help. The Supervisor Mr. Anil went out of his way to ask the passenger what we spoke about. Then he called me over acusing me of asking the passenger for money and suspended without proof. We had a meeting with the manager in chief that knows me well because I've worked at JFK for so many years. I was allowed to go back to work after being suspended for four days. One week after this incident Mr. Anil tried to accuse me of something else since I was not fire from the other accusation. I had lost my phone and when I went back to work. He told me that he was trying to reach me because I had an argument with another manager and something else with a passenger when in reality after I left work on Wednesday October 12, nothing of that magnitude had happened. Everything that was said was a lie

If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form. **PLEASE DO NOT WRITE ON THE BACK OF THIS FORM.**

# NEW YORK STATE
# DIVISION OF HUMAN RIGHTS

TO:     Files                                REGION: O.S.H.I.

FROM:   Joyce Yearwood-Drury                 DATE: May 9, 2017
        Director O.S.H.I.

SDHR CASE NO: 10184762-16-E-RN-E

Federal Charge No. 16GB700489

SUBJECT:    Claude Augustin v. Swissport USA, Inc.

## FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

### I.  CASE SUMMARY

This is a verified complaint, filed by Complainant, Claude Augustin, on Fri 11/4/2016. The Complainant who is Black and Haitian national origin, charges the Respondent with unlawful discriminatory practices in relation to employment because of national origin, race/color.

### II.  SUMMARY OF INVESTIGATION

Complainant's Position:

Complainant states he was accused by his supervisor, Anil Prasad, of asking a passenger for money and was suspended for four days without any proof. A meeting was held with the Manager In Chief, the Complainant, and Mr. Prasad, and then he was allowed to go back to work after the suspension. A week after this incident, Complainant states Mr. Prasad tried to accuse him of something else. He states he lost his phone and when he returned to work, Mr. Prasad told him that he was trying to get in contact with him because Complainant had an argument with another manager and something else involving a passenger. Complainant states in reality after he left work on Wednesday, October 12, nothing of that magnitude had happened and states it is a lie. Complainant states this was a way for them to change his shift and give it to one of his manager's friends who are the same nationality as him. Complainant states he worked the night shift for two years and was finally able to get an afternoon shift, and now has been sent back to the night shift for no reason. Complainant states he also worked in Terminal 7 JFK, and Mr. Prasad told him that he had all of his information for Terminal 7, and states that he is not allowed that information because he does not work in Terminal 7. He also told him that if he was there Complainant would not have gotten the job. Complainant states he feels harassed on the job, and everything he does is wrong in Mr. Prasad's eyes. Every week he is making up something to get Complainant fired, and states when other people he knows does something they don't even get written up.

Respondent's Position:

Respondent provides various transportation services, including Skycap services at JFK Airport in Jamaica, NY. It has fifty-six (56) Skycap Agents, including the Complainant, are diverse, representing employees from various races, national origins, religions, and ages. The Skycap Agents are represented by the International Association of Machinists. Complainant began his employment as a Skycap Agent on April 11, 2006, and continues to be employed in this role. His duties include assisting passengers with luggage from the curb to the check-in counters, or from the arrivals carousel area to the pickup area or parking lot.

Respondent denies Complainant's allegations, and states he was not disciplined because of his race/color or his national origin. Complainant never reported any discrimination to Swissport. He has not identified any similarly situated employee who engaged in similar misconduct, who was not similarly disciplined. On 10/1/16, Complainant was observed talking to a disgruntle passenger who later confronted Manager Anil Prasad and expressed that Complainant refused to provide assistance and was charging him $10 for two bags, instead of the permitted fee of $1 per bag. Mr. Prasad immediately approached Complainant about the passenger's complaint but he denied it. Since Mr. Prasad had observed the interaction between the passenger and the Complainant, he believed the passenger's complaint was legitimate. Mr. Prasad decided to suspend the Complainant for two days (10/2 & 10/3) because this was his first offense. Complainant returned to work on 10/4/16, and was given a verbal warning to remind him of the proper procedures, even though he has been a skycap for a decade.

On 10/12/16, JFK IAT LLC (JFK International Air Terminal, LLC) conducted an audit, during which the Complainant was found chewing gum while interacting with his passengers, this is a violation of company rules of conduct and discipline. On 10/13/16, JFK IAT LLC sent Mr. Prasad a complaint, wherein a station manager for an airline complained about the Complainant was very rude and aggressive to one of his First Class passengers, that the Complainant had refused to help first class passengers needing wheelchair assistance, and that his had occurred on multiple occasions. The airline station manager stated that he personally spoke to the Complainant but his behavior continued. Due to the severity of the complaints both the airline and JFK IAT LLC insisted that Complainant be moved to a different schedule to avoid having these interactions with their passengers. Mr. Prasad advised Complainant's union shop steward of these complaints. On 10/15/16, Mr. Prasad directed the Complainant to meet with him on 10/17/16 and not to report to work until they meet. Complainant failed to show up for this required meeting, and on 10/21/16 the Complainant showed up to Terminal four looking for Mr. Prasad, claiming that he lost his phone and couldn't contact him related to the 10/17/16 meeting. Complainant was given a verbal warning because of this. On 10/22/16, Complainant was suspended for four days and his schedule changed because of the severity and frequency of his misconduct and as per the customer's requests, his duties remain the same and his previous schedule was not assigned to any other employee. Mr. Prasad further denies Complainant's claim that he stated to the Complainant "if he was [working Terminal 7] [Complainant] would not have gotten the job" or shift at Terminal 7.

Investigator's Observations:

Complainant filed a Division complaint #10160359 on 2/25/2013, against another Respondent "JCM Business Solutions, LLC" alleging he was terminated because of his race and national origin, surrounding an incident involving a wheelchair passenger. Said complaint resulted in a "No Probable Cause" determination issued 8/16/13.

The Complainant, in his rebuttal received 1/20/17, states he believes Mr. Prasad has a personal issue with him. He states that Mr. Prasad favors other people by moving him to another shift, which is less busy than the afternoon shift. Complainant states Mr. Prasad is doing stuff that can require some hard sanctions. He states Mr. Prasad is not right with him and other employees except to Pakistanis and Bangladeshi.

Complainant appeared in person on April 17, 2017 at the Division office and a one-party conference in-person was scheduled for April 11, 2017 at 3pm, in which the Complainant was a no call/no show. On the same day, the Division attempted to contacted the Complainant at the number provided (917) 586-7917, and received automated message "that the person is not available right now, please try your call again later." No option was given to leave voicemail. A letter was sent to the Complainant on April 12, 2017 about his failure to show/call, and to please contact the Division by April 28, 2017. Complainant contacted the Division on April18, 2017 and stated he was in an accident and was unable to come to the Division conference on April 11, 2017. A one party conference was then rescheduled for April 19, 2017.

On April 19, 2017, Complainant personally appeared at the Division office for interview. Complainant states he has worked as an airport employee in JFK for over 20 years with different companies, sometimes simultaneously at the same time with more than one company. Complainant revealed he has been with an another company since June 2013 and worked in Terminal 4. He states that Respondent Swissport took over his company in 2014. He states he was hired by managers Bobby and Vinny, but is supervised by Mr. Prasad and states that Prasad Indo-Guyanese. Complainant states new employees are mostly from Pakistan and Bangladesh, and there are other Black Skycap Agents who have been employed with the Respondent for a long time since before Mr. Prasad.

The Division noted to the Complainant that in his verified complaint that he checked off that he was given worse duties than other Skycap Agents. When asked to give specifics, he was unable to do so.

Complainant states that in 2015, he worked 5 days a week, on 3 days his schedule was 4pm - 8pm and 2 days his schedule was 4pm - 10pm. that over two (2) years ago, he worked as an evening shift employee, but had a morning job working airport security in terminal 7 until he was terminated in February 2017 for sleeping on the job. The Division notes that evening shift Skycap employees receive less than day shift Sky cap employees, because of less traffic.

Complainant acknowledges one incident reported in Respondent's response. In that incident, the passenger had ten (10) bags but did not want to pay the $1.00 fee assessed per bag. He denies trying to charge the passenger $10 for two bags. When asked about another complaint that was

- 3 -

e-mailed by JFK IAT LLC's complaint to his employer about him, the Complainant stated that Prasad is friends with the person (which the investigation revealed is Virgin America Lead Mr. Mohammed of Virgin America) who made the complaint and has intentions of getting the Complainant out, but does not know why.

When asked by the Division about his failure to appear at a scheduled meeting of Monday, October 17, 2016 with Prasad, Complainant acknowledged failing to show up, but states he had lost his phone and he had no way to contact the Respondent, not even through his daughter's phone, because they are usually not home at the same time, until he appeared at work on Friday, October 21, 2016. Following this incident, the Complainant was suspended for four days and then transferred to the evening shift. When asked, he acknowledged not grieving this action with the union and states he "just spoke about it openly." Complainant states while serving his suspension, a co-worker called Vinny, vouched for Complainant's strong working habits and believes the suspension was unfair. Complainant states when he returned Mr. Prasad was bothered by the co-worker calling to vouch for Complainant and states that Prasad told him "I know what you did when you was in Terminal 7." Complainant states when he worked with another company he had an accident involving a wheelchair passenger who sustained an injury.

Complainant states Mr. Prasad favors Bangladeshi and Pakistani employees. Complainant states prior to his suspension and then states after his suspension, two (2) Skycap Agents were charging passengers $80/bag and were not counseled about it because they are "friends of Prasad." When asked about their national origin, Complainant states these Skycap Agents are Italian and American. Complainant states that another Agent, from Bangladesh, was suspended twice for the same infraction of overcharging passengers, but states the incidents were months apart from each other. Complainant states there is another Skycap Agent from Haiti but hasn't experienced any issues. The Division notes in particular that when it requested copies of disciplinary notices issued to other employees for similar or the same infraction(s) who are under Mr. Prasad's supervision, Respondent's Human Resources Manager Engles Moussad responded via e-mail dated April 19, 2017, that there were none on record. Also, noted is that the Complainant has no prior written disciplinary history since employed with Respondent until mid-October 2016.

Note: During the conference it was difficult to keep Complainant focused on his complaint. He raised issues about airport workers who are not Respondent's employees, doing things that he perceived to be discriminatory. Then, Complainant showed a photo of an airport employee sitting while sleeping to the interviewer. He acknowledged the airport employee is not a Swissport employee, but rather from Pakistan/Bangladesh and who was paying Mr. Prasad to get a job with Swissport.

At the request of the Division, Respondent provided a list of the Skycap Agents supervised by Anil Prasad in 2016 which consisted of their name, date of hire, national origin, and ethnicity, to include those Skycap Agents who were discharged from employment with date of termination. Comparative data shows: Fifty-four (54) of which 35 are Asian, 17 Black, 1 White, and 1 Hispanic; 21 from Pakistan, 4 from Haiti, 8 from Bangladesh, 1 from Mali, 9 from USA, 2 from Jamaica, 3 from Guyana, 1 from Venezuela, 1 Trinidad & Tobago, 1 from Grenada, 2 from India, and 1 from St. Vincent. The data shows that two (2) Skycap Agents under the supervision of Mr. Prasad, who is Asian of Guyanese national origin, were terminated during the latter part

of 2016. They are of Black race, one of Jamaican national origin, while the other is from Domenica. Notably, these employees were employed for nineteen (19) years and twenty-eight (28) years, respectively.

The Division investigation revealed that Mr. Prasad who has been supervising the Complainant since December 2014, is responsible for the Respondent's recruiting process along with the Respondent's Department of Human Resources, managed by Mr. Engles Moussad and that terminations are done by Human Resources Department.

Attempted to contact Complainant's witness, Yoel Lopez, but a man responded and stated it was the wrong number.

Submitted by: _____
Aracely Ruiz
Human Rights Specialist I

### III. BASIS FOR DETERMINATION

Complainant, who is Black of Haitian national origin states he has been a Skycap Agent for the Respondent since April 11, 2006. He claims that his supervisor, Manager Anil Prasad, Asian of Guyanese national origin, discriminated against him when he accused him of attempting to overcharge a passenger and received complaints from a Respondent's client JFK IATLLC. Complainant states that he was subsequently suspended for four days, and that his shift was changed from the more active day shift to the evening shift. Complainant alleges this is an attempt by Mr. Prasad to give the more favorable shift to his friends who are of the same national origin as him. Complainant also states that other Skycap Agents have not been disciplined for workplace infractions because of their acquaintance to Mr. Prasad.

Respondent denies Complainant's allegations that he was disciplined because of his race and/or national origin.

The Division investigation revealed that Complainant's Skycap Agent position is a service oriented one which requires good people skills. The Agent's duties entail assisting passengers with luggage from the curb to various check in counters within the airport or from the arrivals carousel baggage area to the pickup area or parking lot. Said position entails frequent interaction with passengers from all backgrounds and needs that can result in conflict including passenger complaints. The investigation shows that the Complainant has been in a Skycap Agent since April 11, 2006 and that Mr. Anil Prasad has supervised him as well as other Skycaps since December 2014.

The investigation revealed that the Complainant has no documented disciplinary history. The record also reflects that Respondent stated no other Skycap Agents have a disciplinary history. The Complainant was disciplined by Mr. Prasad for asking a passenger for money, and escalated his discipline to a two (2) day suspension and a follow-up verbal counseling and his shift was changed. Complainant alleges this is an attempt by Mr. Prasad to give the more favorable shift to

his friends who are of the same national origin as him. He also states that other Skycap Agents have not been disciplined for workplace infractions because of their acquaintance to Mr. Prasad.

On October 12, 2016, a JFK Airport Supervisor of Operations, Shagall Campbell performed an unannounced audit of the Complainant. The supervisor's report observed that the Complainant was in proper, professional clean and pressed attire with his badge correctly displayed; that he was actively engaged in providing passengers assistance giving clear and proper instructions and/or guidance; that he was not using personal electronic devices while attending to a passenger; assisted with luggage removal or loading; and that he followed the proper "payment" procedure where he can only "recommend" the fee for handling baggage on the cart. The only thing negative about the report was that Complainant was observed chewing gum while on the job.

Notably, on October 13, 2016, this same JFK Supervisor of Operations, e-mailed Chris Caracciola, Manager of JFK Terminal and Landside Operations, at 4:22pm about a complaint from Virgin America Lead Mr. Mohamed regarding the Complainant being rude and uncooperative with a Virgin America first class passenger the day before. Caracciola e-mailed the Campbell complaint at 4:24pm, two minutes later, to Complainant's supervisor Mr. Prasad requesting he follow-up with the Complainant. The e-mail from Campbell includes Mr. Mohamed's added statement that, "Complainant has refused to assist first class wheel chair passengers on multiple occasions." Mr. Mohamed stated he personally spoke to Mr. Augustine, but nothing has changed. Mr. Mohamed explained that he was frustrated and did not know who to speak to about this issue.

On October 15, 2016, Mr. Prasad directed the Complainant to meet with him on 10/17/16 and not to report to work until they met, however, Complainant failed to show up for the meeting. The record shows that on October 21, 2016, the Complainant showed up claiming that he lost his phone and was unable to contact him. Complainant was then given a verbal warning because of this and suspended for four (4) days for failure to report for a mandatory disciplinary meeting.

Respondent when requested by the Division to provide Complainant's disciplinary history since his hire as a Skycap Agent since April 2006, and Respondent replied there are none. Yet, in its response to the Complainant's allegations, Respondent indicates that "due to the severity of the complaints, the airline and JFK IAT LLC insisted that Complainant be moved to a different schedule to avoid having these interactions with their passengers. There is no document indicating that the client requested the Complainant's removal from the day shift. Complainant states that the individual who complained is Mr. Mohamed of Virgin America who is a friend of Mr. Prasad.

The Complainant does not deny the incident with a Lead from another airline regarding a first class passenger or that issues can sometimes occur with passengers, etc. What Complainant alleges is that African American employees are treated much more harshly and are terminated and replaced by individuals in the same protected class as the supervisors. For example, Complainant states that Mr. Prasad, instead of first verbally and writing up the Complainant, verbally warned him and escalated the discipline to the level of Complainant's total removal

from the day shift to the less favorable night shift with little traffic, effective October 22, 2016, in order to replace him with an employee of his own protected class.

It is noted from Respondent's comparative data on the fifty-four (54) active Skycap Agents currently employed with Respondent and the record, that neither of them, including Skycaps employed since the 1990s, have any disciplinary record. Hence, there is no comparative evidence on Skycaps who committed similar infractions.

The comparative data shows submitted by Respondent coupled with the Complainant's allegations appear to support an inference of discrimination.

The data revealed that during the 1990s and until 2013 the Respondent's workplace and hiring practices were diverse, but hiring and termination after 2013 reflected hiring and retention of employees form only certain protected classes.

In the 1990's, sixteen (16) Skycap Agents were hired. Their national origins were: six (6) from the United States; three (3) Haitians; one (1) Trinidad and Tobago, one (1) St. Vincent; one (1) Jamaican; one (1) Guyanese, and three (3) Pakistani. Racially, this group consisted of ten (10) Black employees and six (6) Asians.

From 2000 through 2012, a total of five (5) Skycap Agents were hired. Their national origins extended from one (1) Haitian; one (1) from the U.S.; one (1) Jamaican; one (1) Venezuelan; one (1) Grenadian. Racially, this group consisted of (4) Blacks and one (1) Hispanic.

During 2013, a total of sixteen (16) Skycaps were hired of which two (2) are from the U.S.; ten (10) are Pakistani; one (1) African from Mali; one (1) Latin American from Guyana; and one (1) Indian. Racially, this group consists of thirteen (13) Asians; one (1) White; and two (2) Black.

During 2014, a total of seven (7) Skycaps were hired of which five (5) are Pakistani and two (2) are Bangladeshi. All are of Asian race.

During 2015 – four (4) Skycaps were hired of which four (4) are from Pakistan. All of Asian race.

During 2016 – six (6) Skycaps were hired of which three (3) are Bangladeshi; one (1) Pakistani; one (1) Indian; and one (1) Guyanese. All of Asian race.

The above comparative analysis of Respondent's Skycap Agent employee profile appears to support that Respondent's profile, which was once racially and ethnically diversified, has since Mr. Prasad's hire, become skewed toward hires of Southeast Asian national origin or race. In fact, Respondent has only hired and/or retained two black employees since 2009 and has hired no Black employee since 2013.

The Division also notes only two Skycaps were terminated, both of long tenure and both Black. The investigation revealed that Mr. Prasad is very much involved in the hire of Skycap Agents along with the Respondent's Human Resources Department's managed by Mr. Engels Moussad.

Although Complainant has only been transferred, he alleges detriment and the Division cannot ignore the above comparative data.

Based on the above referenced facts, the Division investigation supports there is Probable Cause to support Respondent may have violated the New York State Human Rights Law, and recommends this complaint for public hearing.

Reviewed & Approved: _____
Cynthia B. Mendoza-Garcia
Human Rights Specialist II

## IV. DETERMINATION

Based on the foregoing, I find PROBABLE CAUSE to support the allegations of the complaint.

_____
Joyce Yearwood-Drury
Director O.S.H.I.

- 8 -

At same time of EEOC Report
I spoke to Swissport main office

Finish night shift at 11 - 4:30

2nd Job  5:30 - 2:00

you wanted shift 4:00 - 8:00